Michael F. Ram, SBN 104805
mram@forthepeople.com
Marie N. Appel, SBN 187483
mappel@forthepeople.com
Shelby Serig (*Pro Hac Vice* to be filed)
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 846-3862
Facsimile: (415) 358-6923

Jeffrey B. Cereghino, SBN 99480
jbc@cereghinolaw.com
CEREGHINO LAW GROUP LLP
737 Bryant Street
San Francisco, CA 94105
Telephone: (415) 433-4949
Facsimile: (415) 433-7311

Attorneys for Plaintiff and the Putative Class

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RIVA ON THE RIVER HOMEOWNERS ASSOCIATION on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE MANAGEMENT ASSOCIATION, INC. dba THE MANAGEMENT TRUST, a California Corporation, and DOES 1 through 200, inclusive,<br><br>Defendants. | No.<br><br>**CLASS ACTION COMPLAINT**<br><br>CLASS ACTION<br><br>JURY TRIAL DEMAND |

CLASS ACTION COMPLAINT

Plaintiff, RIVA ON THE RIVER HOMEOWNERS ASSOCIATION, files this class action complaint against Defendant, THE MANAGEMENT ASSOCIATION, INC. dba THE MANAGEMENT TRUST, and states:

**INTRODUCTION**

1. Defendant, The Management Association, Inc. dba The Management Trust ("The Management Trust), received earnings credits based on deposits belonging to Plaintiff and the Class in violation of its fiduciary duty. Plaintiff only recently learned of this misconduct and now sues under the common law and statutory law to receive restitution for itself and the class.

**JURISDICTION**

2. This Court has jurisdiction over this case under 28 U.S.C. section 1332(d)(2) because (1) this is a class action with more than one hundred (100) Class Members; (2) The Management Trust is a California Corporation based in the State of California; (3) Plaintiff and all Class Members are domiciled in various states in the United States and (4) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

**VENUE**

3. Venue in this Court is proper: (1) pursuant to 28 U.S.C. section 1391(a)(1) in that Defendant does sufficient business in this District to subject it to personal jurisdiction; and (2) pursuant to 28 U.S.C. section 1391(a)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

**PARTIES**

4. Plaintiff, Riva on the River Homeowners Association ("Plaintiff" or "Riva"), is a non-profit mutual benefit corporation. Plaintiff is a common interest development consisting of 252 condominiums and common areas located in West Sacramento, California. Plaintiff is responsible for preserving, maintaining and managing the community's common areas and common facilities and, to the extent described in Plaintiff's governing documents, providing repair and maintenance services to individual lots and residences.

5. Defendant, The Management Trust was and is a California corporation, under

1

CLASS ACTION COMPLAINT

entity number C2810994, has its principal place of business in Irvine, California. The Management Trust maintains offices throughout California.

6. Plaintiff is ignorant of the true names and capacities of Defendants sued as Does 1 through 100, inclusive, ("Doe Defendants") and therefore sues these Doe Defendants by fictitious names. Plaintiff will amend their Complaint to allege the true names and capacities of these fictitiously named Doe Defendants when they are ascertained. Each of the fictitiously named Doe Defendants is responsible for the conduct alleged in this Complaint and Plaintiff's damages were actually and proximately caused by the conduct of the fictitiously named Doe Defendants.

7. Plaintiff is informed and believes, and on that basis alleges, that each of these Doe Defendants was the agent, joint venturer, and/or employee of Defendant and/or the Doe Defendants, and in doing the things alleged, were acting within the course and scope of the agency, joint venture, and employment with the advance knowledge, acquiescence, or subsequent ratification of Defendant and each and every other Doe Defendant.

**FACTUAL ALLEGATIONS**

8. According to the Community Association Institute, more than 70 million people live in community associations in the United States. That number is expected to double by 2040.[1] Annually, community associations collect $95.6 billion in community assessments with nearly $30 billion of that contributed to reserve accounts. Community association assessments, much like municipal property taxes, are compulsory assessments used exclusively to fund essential obligations, including professional management services, utility expenses, insurance, routine maintenance and capital improvements.

9. Common interest developments (CIDs), also referred to as community associations, provide a communal basis for preserving, maintaining, and enhancing homes and property. All community associations have certain basic, defining characteristics. First, membership in a community association is mandatory and automatic for all homeowners within

---

[1] https://www.caionline.org/AboutCommunityAssociations/Pages/StatisticalInformation.aspx.

the community. Certain legal documents (such as community bylaws) specify the mandatory terms and conditions to be observed by all homeowners that are members of the community association, as well as by the community association itself. These documents require mutual obligations to be performed by the individual homeowner and the community at large, acting through the community association. Mandatory lien-based economic charges or assessments are levied on each homeowner to operate and maintain the community association.

10. To manage their obligations and finances, community associations routinely retain management companies to perform or oversee the obligations and functions (executive and day-to-day operational) of the community association. Community associations are non-profit organizations that are governed by volunteer oversight boards (often with significant annual turnover) consisting of layperson homeowners, and require the expertise of a professional third-party property management company. These property management companies are entrusted to handle, as agent, fiduciary and custodian, the community association's day-to-day operations including managing the receivables from their constituent homeowners.

11. Community associations' liquid funds that are collected from member homeowners and other sources (*e.g.*, insurance proceeds) are used to pay the community association's operating expenses and other obligations. Applicable laws and regulations and/or the community association's governing documents uniformly require association funds to be maintained only at an insured depository institution. Deposit accounts are opened by the property management company for the community association.

12. The deposit accounts fall into two categories: (i) operating accounts established for the maintenance of the community (*e.g.*, landscaping, insurance, labor, utilities, etc.) that the community manager uses to handle daily deposits and withdrawals of association operating funds ("operating accounts") and (ii) reserve accounts established for specific capital improvement expenditures (*e.g.*, roofs, roads, façades, elevators, etc.) for the holding of association reserve funds as required by an association's governing documents and applicable laws ("reserve accounts").

CLASS ACTION COMPLAINT

13. The Management Trust receives earnings credits on consolidated deposit balances for properties under its management. The earnings credits are earned on deposited funds belonging to the community associations. Yet, the earnings credits inure to the benefit of The Management Trust, which can use the earnings credits as simple cash or by submitting invoices to banks holding community association deposited funds for payment to cover the costs of a wide range of products, such as accounting software, customer relationship management (CRM) software, marketing tools, website hosting, payments, and lockbox services.

### A. Plaintiff Riva on the River Homeowners Association's Agreement with Defendant The Management Trust.

14. Plaintiff, Riva on the River Homeowners Association, is a non-profit mutual benefit corporation. Plaintiff is a common interest development consisting of 252 condominiums and common areas and located in West Sacramento, California. Plaintiff is also a CID or community association for the purposes of the Davis-Stirling Common Interest Development Act (Cal. Civ. Code section 4000 *et seq.*). *See Retzloff v. Moulton Parkway Residents' Ass'n., No. One*, 14 Cal. App. 5th 742, 748 (2017) (The Davis-Stirling Common Interest Development Act "governs homeowners associations[]" . . . [and] "consolidated the statutory law governing condominiums and other common interest developments." (internal quotations and citation omitted)).

15. Plaintiff retained The Management Trust and is informed and believes that this retention began on or about December 2, 2009 by entering into a Community Association Management Agreement "("Agreement")."[2] This Agreement automatically renewed each year and was ultimately terminated by Plaintiff in 2018.

16. Pursuant to the Agreement, The Management Trust was contractually bound to provide management services to Plaintiff, including management of the property, management of Plaintiff's funds, management of vendors performing maintenance and repair, accounting,

---

[2] The Agreement includes a confidentiality provision prohibiting any part of the agreement from, among other things, being distributed to anyone other than the parties to the Agreement. While Plaintiff disputes its validity, Plaintiff has not attached the Agreement to the Complaint.

4

CLASS ACTION COMPLAINT

legal, insurance and other related services.

17. Under the Agreement, Defendant was a fiduciary, was required to act as Plaintiff's agent, and was to perform a variety of financial services on behalf of Plaintiff. Services included the collection of assessments and other income received by the Plaintiff, managing reserve accounts, managing collection of delinquent assessments, including lien enforcements and foreclosures, maintaining accounting records, incurring contractual liability on behalf of the Plaintiff to pay for certain incidental repairs and maintenance items, and disbursing such payments.

18. The parties' Agreement required Plaintiff to grant access to its financial accounts to Defendant, and further required Plaintiff to move its deposits to a bank of Defendant's choosing. Defendant chose Pacific Western Bank ("the Bank") and was authorized and empowered to deposit Plaintiff's funds in the Bank, and to conduct transactions between the Plaintiff's respective accounts at the Bank including moving funds from reserve accounts to operating accounts. The Agreement further required The Management Trust to handle Plaintiff's funds without loss or undue delay.

19. Plaintiff is informed and believes that The Management Trust negotiated an agreement with the Bank, and perhaps other entities, under which the Bank paid The Management Trust earnings credits. These earnings credits were based on the amount of deposited funds that The Management Trust held at the Bank–funds which belonged to the Plaintiff and the Class. Further, Plaintiff is informed and believes that the payment of the earnings credits to The Management Trust in an amount and manner satisfactory to The Management Trust was a primary consideration in selecting the institution where Plaintiff's and Class Members' funds were deposited. The Management Trust advised the bank that, if it did not pay the earnings credits in the percentage demanded, The Management Trust would move the Plaintiff's and Class Members' funds to a bank that would acquiesce to The Management Trust's demands.

20. At no time did The Management Trust, despite its role as a fiduciary and agent to

5

CLASS ACTION COMPLAINT

Plaintiff and the Class, disclose to Plaintiff its arrangement with the Bank to use Plaintiff's deposited funds to collect earning credits from any bank.

21. Because of The Management Trust's misconduct, Plaintiff and Class Members have suffered actual damages. Earnings credits were paid directly to The Management Trust despite being based upon deposited funds belonging to Plaintiff and the Class. Because the credits were earned using funds belonging to Plaintiff and the Class, The Management Trust should have passed the earnings credits on to Plaintiff and the Class. Because The Management Trust has engaged in this deception over a period of many years and against hundreds of Class members, a class action is the only viable, economical and rational means for Class Members to recover their damages from The Management Trust.

22. In addition, Plaintiff and the Class seek to enjoin The Management Trust from continuing any earnings credit arrangement with any bank without full disclosure to its community association clients. Full disclosure will include, but should not be limited to, disclosure of contractual agreements between The Management Trust and any bank relating to earnings credits, disclosure of the amount and nature of earnings credits paid or to be paid to Defendant in the future should participating banks continue paying earning credits to Defendant and a full and complete annual accounting of any earnings credits received and express written approval of any business relationship between The Management Trust and any bank that involves profiting or benefiting from Plaintiff's and the Class's deposits.

## **CLASS ACTION ALLEGATIONS**

23. Plaintiff brings this action as a class action pursuant to Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of itself and the class. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements as set forth in Rule 23(a) and Rule 23(b)(3).

24. Plaintiff advances this action on behalf of the following Class and Subclass:

**Class**

All common interest developments (CIDs) or co-ops in the United

States that engaged The Management Trust to manage their CID/co-op from January 1, 2012 to present. Excluded from the Class is The Management Trust, its legal representatives, assigns and successors and any entity in which The Management Trust has a controlling interest. Also excluded are any entities whom any of the Plaintiff's counsel is currently suing on behalf of a client, the judge to whom this case is assigned and any member of the judge's immediate family and judicial staff.

**Subclass**

All common interest developments (CIDs) or co-ops in the State of California that engaged The Management Trust to manage their CID/co-op from January 1, 2012 to present. Excluded from the Class is The Management Trust, its legal representatives, assigns and successors and any entity in which The Management Trust has a controlling interest. Also excluded are any entities whom any of the Plaintiff's counsel is currently suing on behalf of a client, the judge to whom this case is assigned and any member of the judge's immediate family and judicial staff.

25. <u>Numerosity (Rule 23(a)(1))</u>. Plaintiff is informed and believes that the Class is comprised of approximately 1,500 common interest developments and community associations in Washington, Oregon, California, Nevada, Arizona, Colorado, and Texas, making joinder impractical. The disposition of the claims of these Class Members in a single class action will provide substantial benefits to all parties and to the Court.

26. <u>Commonality (Rule 23(a)(2))</u>. There exist questions of law and fact common to all Class Members. Common questions include, but are not limited to:

    a.    Whether The Management Trust's agreements with the Plaintiff and the Class failed to disclose earnings credits it receives from banks;

    b.    Whether The Management Trust was required to disclose earnings credits it receives from banks;

    c.    Whether The Management Trust had an undisclosed business relationship with banks and received undisclosed financial incentives from the banks to deposit Plaintiff's and the Class Members' funds into the banks.

    d.    Whether The Management Trust failed to disclose to Plaintiff and Class

7

CLASS ACTION COMPLAINT

        Members that it was paid significant funds in earning credits based upon deposits belonging to the Plaintiff and Class;

e. Whether The Management Trust failed to share its earning credits funds with Plaintiff and the Class;

f. Whether The Management Trust violated the unlawful prong of California Business and Professions Code section 17200;

g. Whether The Management Trust violated the unfair prong of California Business and Professions Code section 17200;

h. Whether The Management Trust's failure to disclose material facts violated California Civil Code section 5375;

i. Whether The Management Trust's failure to disclose material facts violated California Civil Code section 5380;

j. Whether The Management Trust had a fiduciary duty to Plaintiff and Class Members to disclose the benefits it obtained from its clients' money;

k. Whether the facts not disclosed by The Management Trust to Plaintiff and Class Member are material;

l. Whether Plaintiff and Class Members are entitled to compensatory damages, restitution, and the amounts of damages and restitution;

m. Whether The Management Trust should be declared financially responsible for notifying all Class Members of the earning credits it received;

n. Whether The Management Trust should be ordered to disgorge, for the benefit of Class Members, all or part of their ill-gotten profits received from earning credits and/or to make full restitution to Plaintiff and Class Members;

27. <u>Typicality (Rule 23(a)(3))</u>. The claims of the representative Plaintiff are typical of the claims of Class Members, in that the representative Plaintiff, like all Class Members, is a

community association that retained The Management Trust to manage their property and whose funds were deposited in banks that then paid The Management Trust earning credits on those deposits without disclosing that to the community association. The representative Plaintiff, like all Class Members, has suffered a common injury: The Management Trust violated its contractual, statutory and fiduciary duties to Plaintiff and Class Members and improperly and wrongfully profited from Plaintiff's and Class Members' funds. The factual basis of The Management Trust's misconduct is common to all Class Members.

28. <u>Adequacy (Rule 23(a)(4))</u>. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions, including actions involving issues similar to those raised in this case. Plaintiff and its counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor its counsel have any interest adverse to those of the Class.

29. <u>Predominance of Common Questions (Rule 23(b)(3))</u>. Common questions of law and fact predominate over questions involving individualized analysis. Fundamentally, there is no material question of fact or law that is not common to Class Members. Common issues of fact include that all Class Members entered into a contractual relationship with The Management Trust, trusted and relied upon The Management Trust to act in the best interests of their association and to fulfil its fiduciary duties. The Management Trust pursued its own interests (rather than Class Members') in banking Class Members' community funds, and The Management Trust failed to disclose its earnings credits arrangements with banks. The Management Trust's failure to disclose these arrangements is a common question, as is The Management Trust's improper and unjust enrichment from Class Members' deposited funds. Common questions of law include whether The Management Trust's conduct violates California's consumer protection statutes and other law, and the Class Members' entitlement to damages and remedies.

30. <u>Superiority (Rule 23(b)(3))</u>. Plaintiff and Class Members have all suffered and

9

CLASS ACTION COMPLAINT

will continue to suffer harm and damages because of The Management Trust's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the subject controversy. Because of the number of impacted Class Members, and the cost of litigation, most Class Members likely would find the cost of litigating individual claims to be prohibitive. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation because it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication. There is no impediment to the management of this action because the common questions of law and fact to all Class Members are virtually identical.

**ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS AS A DEFENSE**

31. The Management Trust concealed material truths for decades, never disclosing either its earnings credits arrangement with banks in which Class Members' funds were deposited, nor the profits reaped from Class Members' deposits.

32. The Management Trust's acts of concealment also include, but are not limited to, failure to comply with statutory disclosure requirements, violating its fiduciary obligations to Class Members and failing to share the improper benefits it received from Class Members' banks.

33. Based upon The Management Trust's misrepresentations, omissions and concealment, The Management Trust is equitably estopped from asserting a statute-of-limitations defense. Plaintiff learned of Management Trust's misconduct in discussions with its counsel in the last few months specifically centered upon one indicia of an earning credit arrangement—Defendant's insistence on depositing Plaintiff's funds in a bank of Defendant's choice. Plaintiff could not reasonably have discovered the misconduct earlier than that.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

34. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 33 of this complaint.

35. This is an action against The Management Trust for breach of contract.

36. The Management Trust entered into contractual relationships with Plaintiff and Class Members. Plaintiff is informed and believes the contractual agreements were substantially uniform throughout the Class Period, and any variations were not material.

37. In exchange for the fulfillment of various duties and obligations, The Management Trust received payment from Plaintiff and the Class Members. Plaintiff has performed all duties and responsibilities required of Plaintiff under the contract.

38. The Management Trust breached its contract obligations by failing, as a fiduciary, to act in the best interest of the Class, by failing to disclose the earnings credit arrangement with Class Members' banks, failing to prioritize Class Members' financial health over The Management Trust's, and by profiting secretly from Class Members' funds.

39. Plaintiff and the Class are entitled to full disgorgement of all earning credit profits obtained by The Management Trust directly arising from Plaintiff's and Class Members' funds deposited in participating banks.

40. Plaintiff and the Class are also entitled to full recovery of all costs and attorney fees related to The Management Trust's breach of contract. On July 24, 2024, on behalf of the Class, Plaintiff sent notice of the contractual violations to The Management Trust.

**SECOND CAUSE OF ACTION**
**(Violation of California Unfair Competition Law- Unlawful Business Practice)**

41. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 33 above.

42. This is an action against The Management Trust for violation of California Unfair Competition Law, pursuant to the unlawful business practice prong.

43. California Business and Professions Code section 17200 *et seq*. prohibits acts of unfair competition, which includes unlawful business practices.

44. The Management Trust engaged in unlawful business practices that entailed an intentional failure to disclose, contrary to California statutes set forth in this Complaint, its earnings credits arrangements with banks.

45. The Management Trust's practices constitute an unlawful business practice because they violate Civil Code sections 5375, 5375.5, 5380 as well as California common law for breach of contract and breach of fiduciary duty.

46. To this day, The Management Trust has engaged and continues to engage in unlawful business practices by knowingly failing to disclose to Class Members the earnings credits and profits that it collects from Class Members' deposits.

47. As a direct and proximate cause of The Management Trust's unfair and unlawful methods of competition and unfair, deceptive or unlawful acts or practices, Plaintiff and Class Members have suffered money damage in the loss of Earnings Credits unjustly received by The Management Trust.

48. As a proximate result of its unlawful practices, The Management Trust has been unjustly enriched and should be required to make restitution to the Plaintiff and Class Members pursuant to sections 17203 and 17204 of the California Business & Professions Code.

## THIRD CAUSE OF ACTION
**(Breach of Fiduciary Duty)**

49. Plaintiff incorporates by reference the allegations contained paragraphs 1 through 33 of this complaint.

50. This is an action against The Management Trust for breach of fiduciary duty.

51. Plaintiff and the Class entered into a fiduciary relationship with The Management Trust whereby they relied on The Management Trust to act in their best interests. As a result of this fiduciary relationship, The Management Trust had a duty to act with loyalty, care and honesty and to avoid conflicts of interest.

52. Despite the existence of this relationship, and The Management Trust's duties pursuant to the relationship, The Management Trust failed to discharge its fiduciary duties to Plaintiff and Class Members by forming an undisclosed arrangement with banks to earn credits and other benefits from funds belonging to the community associations it managed. The Management Trust further violated its fiduciary duties by prioritizing its own financial

enrichment above Plaintiff's and Class Members' best interests when carrying out its management duties. The Management Trust failed to disclose its conflict of interest with the banks and secret profits from Class Members' deposited funds.

53. As a direct and proximate result of The Management Trust's breaches of its fiduciary duty, Plaintiff and members of the Class have been damaged in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**(Violation of Unfair Competition Law – Unfair Business Practice)**

54. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 33 of this complaint.

55. This is an action against The Management Trust for Violation of the Unfair Competition Law, unfair prong.

56. The Management Trust engaged in an unfair business practice by knowingly failing to disclose material facts to Plaintiff and Class Members regarding its earnings credits arrangement and improper receipt of benefits.

57. The Management Trust engaged in unfair business practices because it formed an undisclosed arrangement with banks to earn credits and benefits off of funds belonging to Plaintiff and violated its fiduciary duties to Plaintiff by prioritizing its own financial enrichment above Plaintiff's when carrying out its management duties.

58. The Management Trust's business practices outlined above are unfair because they substantially injure consumers—the associations that rely upon The Management Trust to make financial decisions in the community's best interests—to disclose any financial arrangements that involve the community's funds and to pass along savings, credits or benefits that are accrued on its funds.

59. Here, the injury to consumers is not outweighed by any countervailing benefits to consumers or competition. Consumers receive no benefit from the earnings credits paid to The Management Trust. The secret earnings credit arrangements harm competition because only the

largest community management firms, such as The Management Trust, have access to enough client funds to qualify for lucrative earnings credits. The only party that benefits in this scenario is conglomerate management firms, such as The Management Trust, which only grow larger, richer and more powerful as a result of these earning credits.

60. Finally, the injury could not reasonably have been avoided by Plaintiff and Class Members because The Management Trust has actively concealed or otherwise failed to disclose its unfair practices.

61. To this day, The Management Trust has engaged and continues to engage in unfair business practices by knowingly failing to disclose to Class Members its secret profit from Class Members' funds.

62. As a direct and proximate cause of The Management Trust's unfair practice, Plaintiff and Class Members are entitled to restitution in the amount of the in earnings credits unjustly received by The Management Trust.

63. As a proximate result of their unfair practices, The Management Trust has been unjustly enriched and should be required to make restitution to the Plaintiff and Class Members pursuant to sections 17203 and 17204 of the California Business & Professions Code.

### FIFTH CAUSE OF ACTION
**(Unjust Enrichment)**

64. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 33 of this complaint.

65. This is an action against The Management Trust for unjust enrichment.

66. By means of The Management Trust's wrongful conduct alleged here, The Management Trust concealed its secret contractual arrangement with Plaintiff's and Class Members' banks in a manner that was unfair, unconscionable, and oppressive.

67. As a result of The Management Trust's wrongful conduct as alleged here, The Management Trust has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members. The Management Trust's unjust enrichment is traceable to, and resulted

directly and proximately from, the conduct alleged here.

68. Under the common law doctrine of unjust enrichment, it is inequitable for The Management Trust to be permitted to retain the benefits it received, without justification, from Plaintiff's and Class Members' funds in an unfair, unconscionable and oppressive manner. The Management Trust's inequitable retention of such funds constitutes unjust enrichment.

69. The financial benefits derived by The Management Trust rightfully belong to Plaintiff and Class members. The Management Trust should be compelled to create a common fund for the benefit of Plaintiff and members of the Class with all wrongful or inequitable proceeds received by The Management Trust.

70. Plaintiff and the Class seek the disgorgement and restitution of The Management Trust's wrongful profits, revenue and benefits, plus interest, to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy The Management Trust's unjust enrichment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment against The Management Trust and in favor of Plaintiff, and to award the following relief:

1. Certification of a class consistent with the class definitions and appointment of Plaintiff as class representative;

2. Appointment of the undersigned as counsel for the proposed Class;

3. A declaration that The Management Trust is financially responsible for notifying all Class Members;

4. A declaration that The Management Trust must disgorge, for the benefit of the Class, its ill-gotten profits received from Earning Credits, and/or to make full restitution to Plaintiff and the Class Members;

5. An award of costs and attorneys' fees, as allowed by law, and/or from a common fund created hereby;

6. Leave to amend to conform to the evidence presented at trial; and

7. Orders granting such other and further relief as may be appropriate.

**JURY TRIAL DEMAND**

Plaintiff hereby demand a jury trial for all individual and Class claims so triable.

Dated: October 9, 2024                    Respectfully Submitted,

MORGAN AND MORGAN,
COMPLEX LITIGATION GROUP

By:   /s/Michael F. Ram
        Michael F. Ram

Michael F. Ram, SBN 104805
mram@forthepeople.com
Marie N. Appel, SBN 187483
mappel@forthepeople.com
Shelby Serig (*Pro Hac Vice* to be submitted
sserig@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 846-3862
Facsimile: (415) 358-6923

Jeffrey B. Cereghino, SBN 99480
jbc@cereghinolaw.com
CEREGHINO LAW GROUP LLP
737 Bryant Street
San Francisco, CA 94107
Telephone: (415) 433-4949
Facsimile: (415) 433-7311

*Attorneys for Plaintiff and the Class*

16

CLASS ACTION COMPLAINT