# EXHIBIT J

# COMMUNITY ASSOCIATIONS INSTITUTE PROFESSIONAL MANAGER CODE OF ETHICS

**Updated and approved by the CAI Board of Trustees on August 18, 2021**
**Updated and approved by the CAI Board of Trustees on February 14, 2024 Effective Date September 1, 2024.**

The Manager Shall:

1. Comply with current bylaws, standards, and practices as may be established from time to time by CAI and all federal, state, and local laws, ordinances, rules, and regulations in effect where the Manager practices.

2. Fulfill duties owed to CAI; including, but not limited to, completely and truthfully complete all applications and renewals, promptly notify CAI of any felony or misdemeanor convictions, judgments or consent decrees, loss of fiduciary liability coverage, loss of license to practice and/or disciplinary action by a professional organization and participate in continuing professional education through CAI and other industry related organizations.

3. Act in the best interests of the Client; refrain from making inaccurate or misleading representations or statements; not knowingly misrepresent facts to benefit the Manager.

4. Undertake only those engagements that the Manager can reasonably expect to perform with professional competence.

5. Exercise due care and perform planning and supervision as specified in the written management agreement, job description, or duly adopted CAI Board of Trustees policies.

6. Disclose all relationships in writing to the Client regarding any actual, potential, or perceived conflict of interest affecting any relationship between the manager and the Client. The Manager shall take all necessary steps to avoid any perception of favoritism or impropriety during the vendor selection process and negotiation of any contracts.

7. Provide prompt written disclosure to the client of any compensation, gratuity, or other form of remuneration from individuals or companies who act or may act on behalf of the Client.

8. Ensure that Client homeowners receive timely communication and response as required by state statutes or legal documents and protect their right of appeal.

9. Disclose to the Client the extent of fidelity or other contractually required insurance carried on behalf of the Manager and/or Client and any subsequent changes in coverage, which occur during the Manager's engagement if the amount is lower than the contract amount requires.

10. See that the funds held for the Client by the Manager are held in a custodial manner only, are in separate accounts, are not misappropriated or commingled with funds of other clients, and are returned to the Client at the end of the Manager's engagement in accordance with applicable terms and conditions; Prepare and furnish to the Client accurate and timely financial reports in accordance with the terms of the management agreement, job description or duly adopted Board policies.

11. Recognize the original records, files, and books held by the Manager are the property of the Client to be returned to the Client at the end of the Manager's engagement upon request; Maintain the duty of confidentiality to all current and former Clients.

12. Refrain from criticizing competitors or their business practices; act in the best interests of their employers; maintain a professional relationship with peers and industry related professionals.

13. Always conduct themselves in a professional manner when acting in the scope of the Manager's employment. This includes but is not limited to, refraining from behavior that would reasonably be perceived to be harassing, bullying, discriminatory, or unethical.

14. Not engage in any form of anticompetitive conduct in violation of the antitrust laws, including price fixing.

15. Not use the work products of colleagues or competing management firms that are considered proprietary without the expressed written permission of the author or the management firm.

**Compliance with the Professional Manager Code of Ethics is further amplified in the Code Clarification Document provided by Community Associations Institute.**

Revised:
September 2006
August 2021
February 2024

# CODE CLARIFICATION DOCUMENT

**Last revised August 2021**
**Last revised February 2024**

## A. <u>Preamble</u>

The Community Associations Institute (CAI) Manager Code of Ethics reflects the commitment that all CAI designation holder professionals make to high standards of competency and ethics. The CAI Manager Code of Ethics benefits and protects the public, provides standards for delivering community association management services, and advances community association management as a distinct and valuable profession. Compliance with the CAI Manager Code of Ethics is a requirement of holding CAI designations and accreditations and is critical to the integrity of AMS®, PCAM®, LSM®, and AAMC® marks. Violations of the Code may subject designation holder professionals and employers of designation holders to discipline.

## B. <u>Authority</u>

The Code derives its authority from CAI. CAI's Board of Trustees has established a minimum standard of professional ethical performance for those individuals and companies who receive recognition or designations from CAI.

Those individuals or entities that apply for or hold professional designations from CAI are subject to this Code. Those designations include AMS, PCAM, LSM, and AAMC.

## C. <u>Definitions</u>

1. <u>Manager</u> - a singular term which shall apply to all the following persons or entities providing or offering some form of community association or financial or administrative or consulting services to one or more Clients:

a. A single practitioner functioning as a client employee, or
b. A single practitioner employed by a firm contracted by one or more Clients, or
c. A principal or supervisory staff member for a firm which is contracted by one or more Clients, or
d. A firm, which is contracted by one or more Clients, whether it is organized as a corporation, partnership, or other entity.

Because the Code is designed to establish a standard of conduct for the practice of managing community associations, it is equally applicable to individuals and firms. An individual who agrees to abide by this Code shall also be responsible to see that any other person or firm under their supervision shall comply with the Code.

2. <u>Client</u> - a singular term applying to one or more community association properties (condominium, homeowner association, cooperative, PUD, PRD, etc.) and their governing body. The Client may employ the Manager directly or through their company or be under some form of independent contract with the Manager or their company.

## D. <u>Amplification</u>

To further explain and define the Code of Ethics, CAI provides the following information.

**The following explanations correspond to the numbered paragraphs in the Professional Manager Code of Ethics**

1. *<u>Current standards or practices</u>* are those numbered one through fifteen in the Code. Managers who practice in states with legislative requirements must comply with all applicable laws, rules, regulations, and ordinances. Managers shall not discriminate in any relationship, with any individual or firm, based upon race, color, religion, sex, national origin, familial status, or handicap and shall comply with all federal, state, and local laws concerning discrimination. Managers shall not engage in any form of price fixing, anti-trust, or anti-competition with other Managers or vendors.

2. *<u>Duty to CAI.</u>* While CAI membership is not mandatory, the Manager must satisfy the designation requirement to use said designation. Additionally, the Manager has a duty to remain informed on relevant policies, procedures, and practices related to the Manager's CAI membership.

   The Manager has a duty to inform CAI within 30-days and provide official documentation and a detailed explanation of the following:

   - Disciplinary action by any professional organization or licensing agency.
   - Conviction of a felony or misdemeanor or imprisonment under sentence (except traffic violations).
   - Liable finding or judgement or consent decree in civil court related to any business or professional matter (except for any domestic or family law case).
   - Conviction of fraud, misrepresentation, or misappropriation of funds or property
   - Loss of ability to obtain fiduciary liability coverage.

3. *<u>Act in the best interests of the Client; Not make any inaccurate or misleading representations or statements to a prospective Client; Not knowingly misrepresent facts to benefit the Manager.</u>* The Manager has a fiduciary duty/responsibility to the Client and should always act in the best interests of the Client. Managers should avoid exaggeration, misrepresentation, concealment, and knowingly distributing misinformation.

4. *<u>Undertake only those engagements that they can reasonably expect to perform with professional competence.</u>* The Manager shall provide accurate information within his area of expertise and refrain from the unauthorized practice of other professions. No Manager should provide service or assistance that is outside their field of competence or licensure. For example, but not limitation, managers shall not provide legal, accounting, insurance, or engineering advice and must leave such advice to the appropriate, licensed professionals, including lawyers, insurance, engineers, and accountants. Unless these services are administrative in nature.

5. *<u>Exercise due care and exhibit planning and supervision as specified in the written management agreement, job description, or duly adopted Board policies.</u>* The intent of this statement is for the Manager to make a good faith effort to operate within the framework of the applicable employment/agent relationship and to abide by the terms of said agreement. Any failure of the

Manager to fully comply with this requirement shall not be considered relevant unless the failure is material and/or willful.

6. *Disclosure of any possible conflict of interest* is the key here. An example may be of assistance. A Manager (individually or through a company) may have financial interest in a service contractor, supplier, or professional firm that is being considered by that Manager's Client. Disclosure must be in writing and sufficiently in advance of the selection process to allow full consideration of the possible conflicts and any alternatives. The fact that the Client may still choose the Manager's related entity is not a violation of the Code, provided ample disclosure was given.

7. (a) For Management Company Executives – Provide annual disclosure (or upon execution of a new management agreement) all relationships with business partners or referral partners who the association is required to do business with under the management agreement for which the management company earns a commission, credit, payment, rebate, or other benefit. If the Association is not required to do business with a third party who provides consideration to the management company, disclosure shall be made to the Client prior to engaging a business partner who provides financial benefit to the management company.

   (b) For Community Managers – Provide disclosure to the management company executive and Client of any compensation, gratuity, or other form of remuneration from individuals or companies who act or may act on behalf of the Client valued in excess of $1,000 annually. Disclosure to the client shall be made prior to the Client engaging the business partner who provides renumeration.

8. CAI recognizes that *ensuring that homeowners have timely notice or that their appeal rights are protected* is limited by the extent that the Manager can influence their Client. Thus, a Manager who makes reasonable efforts to properly advise the Client has complied with this standard, even if the Client chooses to reject the Manager's advice.

9. *Disclose to the Client the extent of fidelity or other contractually required insurance carried on behalf of the Manager and/or Client and any subsequent changes in coverage, which occur during the Manager's engagement if the amount is lower than the contract amount requires*. This standard does not require the Manager to carry fidelity insurance unless an AAMC company or it is required by the contract. The change is based upon any decrease in contractually disclosed/required coverage and/or fidelity bond coverage.

10. If the Manager is responsible for *handling funds* for a client, that Client must have at least one independent cash account established in the Client's name. This standard does not preclude a manager from initially depositing payments into a central account with funds promptly distributed to individual Client accounts, nor does it prohibit a central disbursement or payroll account that is promptly reimbursed by each Client's individual cash account. When a manager's engagement has ended for a client, all funds must be returned to the Client the earlier of:

    - the time limit under state statute, or
    - the time limit in the existing management agreement, or
    - within 30 days of the end of the Manager's engagement (see also #12)

    The Manager shall prepare and furnish the Client accurate and timely financial reports in accordance with the terms of the management agreement, job description, or duly adopted Board policies.

11. Recognize the original records, files, and books held by the Manager are the property of the Client to be returned to the Client at the end of the manager's engagement upon request; maintain the duty of confidentiality to all current and former Clients specifically as it relates to confidential owner data and confidential (executive session) meeting information.

    *Original records, files, and books* are those items that were given to the manager at the beginning of their engagement or were developed by the manager and/or the Client during the period of the manager's engagement. *Confidential owner data* is defined as any information about or related to the owner such as name, address, email, phone, banking account data, and any other personally identifiable information. *Property data* is defined as data which relates to the size, square footage, location, or valuation of property that may also be found in public record or real estate data sheets. These definitions may be further expanded by the management agreement.

    Unless provided in such an agreement or otherwise, the manager has no obligation to provide the Client with Client-related computerized or cloud stored data unless the Client owns the computer and software, and such data can be separated from that data and software which are proprietary to the manager. For example, if the manager is a company that maintains homeowner information on its computer servers or other data storage system, the manager shall provide the homeowner information to the Client, in a generally acceptable electronic or digitized format. However, when the manager transfers Client data to Client, the manager must take all reasonable measures to secure the confidential nature of any confidential Client and owner data it stores to prevent unauthorized disclosure of such data.

    Those items that the manager brought to and used during the engagement, such as operation or procedure manuals, remain the property of the manager. It is understood that property data which may be gathered or accumulated and disclosed to others whether or not to the benefit of the client is not a violation of this code.

    While the manager must turn over all records, files, and books, they may retain digitized or photocopies of those key materials that might be necessary for the Manager in dealing with post-engagement Client-related matters. Return of these items should be consistent with the schedule outlined in #10 above. The manager shall maintain a *duty of confidentiality to all current and former Clients,* commencing the effective start date of the relationship and continuing through infinity.

12. *Refrain from criticizing competitors or their business practices; act in the best interests of their Employers; maintain a professional relationship with peers and industry related professionals.*

13. *Always conduct themselves in a professional manner when acting in the scope of the Manager's employment.* This includes, but is not limited to, refraining from behavior that would reasonably be perceived to be harassing, bullying, discriminatory, or unethical.

    A Manager shall:

    - Ensure that your appearance is appropriate/presentable for the professional circumstance.
    - Exhibit a polite demeanor toward clients.
    - Maintain professional communication with clients and residents.

- Act with reasonable diligence and promptness.
- Ensure work should reflect integrity and good faith.
- Act with integrity, honesty, equity, and fairness to all persons.

14. *Not engage in any form of anticompetitive conduct in violation of the antitrust laws, including price fixing.* Subject to all Federal, State, and Local statutes, laws, rules, and ordinances.

15. *Not use the work products of colleagues or competing management firms that are considered proprietary without the expressed written permission of the author or the management firm.* Work products that is posted on the internet, e-mailed, presented as part of an education session or industry-related networking exchanges are not considered proprietary unless they are clearly labeled as proprietary documents or subject to further protection under the copyright or registration. Lists of Clients along with their contact and confidential contract information that are maintained by a Management Company are considered proprietary.

**E. Future**

The Board of Trustees may expand amplification of this Code, and CAI reserves the right to update or amend both the Professional Manager Code of Ethics and the Code Clarification Document. Any such revision, updating or amendment shall be promptly promulgated to CAI Manager members and, after due notice, will apply to all members subject to the Code.

**F. E-mail as Official Correspondence**

The Board of Trustees establishes e-mail as official correspondence in matters relating to alleged violations of CAI Professional Manager Code of Ethics. The CAI Designation Ethics Committee, Chief Executive Officer, or CAI staff designee may elect to notify and or update a designee of a complaint that has been filed against their designation by e-mail, and upon doing so will make effort in tracking delivery of correspondence to ensure the designee has the opportunity to respond.

**G. Disciplinary Action**

After an internal investigation and hearing as provided in CAI's Ethics Enforcement Procedures Policy, a Manager found to be in violation of this Code shall face a sanction in accordance with the enforcement policies adopted by the CAI Board of Trustees. The extent of such sanction shall be commensurate with the nature, severity, and intent of the violation. In a situation where a firm, principal(s), or supervisory staff are involved, sanctions may be imposed on more than one individual or the firm itself.